IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

WEST WIND AIR LLC, d/b/a ChrisAir                              PLAINTIFF

v.                      No. 5:16-cv-274-DPM

THRUSH AIRCRAFT INC.                                           DEFENDANT

ORDER

**1.** Chris Air is a crop dusting company based in south Arkansas. In September 2013, one of its airplanes had to make a crash landing in a cotton field because of throttle problems. The pilot was uninjured, but the crop duster was damaged. Chris Air has sued the airplane's manufacturer, Thrush, making various product liability claims. Thrush is a Georgia company. The Court denied without prejudice Thrush's early Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction: The somewhat murky record, the Court concluded, made a *prima facie* case for holding Thrush in court here; but the Court invited another motion after jurisdictional discovery if Thrush maintained its opposition. *№ 18*. Thrush has renewed its motion, with vigor.

Though the Court has held no evidentiary hearing, it nonetheless has a full record of affidavits and documents. Taking that record in the light most favorable to Thrush, and resolving disputed facts in its favor, the question is whether Chris Air has indeed made a *prima facie* case that this Court has personal jurisdiction over Thrush in the parties' dispute about this airplane. *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). Arkansas law extends personal jurisdiction as far as the Due Process Clause allows. ARK. CODE ANN. § 16-4-101(B). So the state law question and federal law question become one — the familiar due process stew of whether it's fair and reasonable, considering all the facts with jurisdictional weight, to require this Georgia-based manufacturer to defend this crop duster in a court sitting in Arkansas. *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 879–882 (2011); *Viasystems, Inc. v. EBM-Papst St. Georgen GMBH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011). The Court held at the start of the case, and Chris Air has now conceded by silence, that no general jurisdiction exists. *№ 18 & 31.* Thrush's affiliations with Arkansas are not so continuous and systematic that the manufacturer is essentially at home here. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The fighting issue is

whether specific personal jurisdiction over Thrush comports with due process.

The standard is whether, first, Thrush has minimum contacts with Arkansas, and if so, second, whether exercising jurisdiction over Thrush in this state is reasonable. *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 476–78 (1985). Random or attenuated contacts with Arkansas aren't enough, and neither is the unilateral activity of a third person. *Burger King*, 471 U.S. at 475. The key inquiry is whether Thrush purposefully availed itself of the privilege of conducting activities in Arkansas. *Ibid.*

**2.** Here are the material facts. Thrush manufactures and sells airplanes to dealers, who then sell them to operators. Though it considered implementing a factory direct sales program about ten years ago, Thrush has never sold a plane directly to an Arkansawyer. (At one point Thrush had a dealer in Arkansas. That dealer has sold a few Thrush planes to Chris Air over the years — though not the plane that crashed — and it hasn't sold Thrush planes in almost a decade.) Thrush says it doesn't always know where its planes are sold, or to whom, after they've been delivered to dealers. One of Thrush's dealers is Mid-Continent Aircraft Corporation in Missouri, a few

dozen miles from Arkansas's northern border. This dealer sells planes and parts to its agricultural aviation customers in the region, like Chris Air. Mid-Continent sold the Thrush plane that crash landed in the cotton field to Chris Air.

Thrush is a member of the Arkansas Agricultural Aviation Association. The Georgia manufacturer says it joins state aviation associations to maintain public relations, provide brand recognition, and become educated on the state's agricultural laws, regulations, and trends. *№ 17-3 at ¶ 9*. Thrush goes to the Arkansas association's annual trade convention in this state to, in Thrush's words, "promote[] its brand and support[] the independent dealer network." *№ 17-3 at ¶ 12*. And on at least one occasion Thrush has advertised in the Arkansas association's membership directory. *№ 31-1 at 20*.

Thrush and Chris Air had some direct dealings before the crash. Chris Air representatives spoke with Thrush representatives at the annual convention in Arkansas over the years. Early on, Thrush invited Chris Air employees to tour its factory and watch the manufacturing process, and to thank them for their business. Chris Air corresponded directly with Thrush's maintenance department when it had issues with Thrush planes, and bought

-4-

parts directly from Thrush as recently as 2013. Chris Air once picked up a Thrush engine installer to work on a Thrush plane in Arkansas. Thrush admits it sends mechanics to the location of Thrush aircraft, at its own expense, if operators request assistance.

3. Chris Air didn't say the words "stream of commerce," but in essence that phrase aptly describes how the plane progressed from Thrush to Mid-Continent then to Chris Air. *Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 947–48 (8th Cir. 1998). The Supreme Court has firmly rejected the stream of commerce theory as a basis for general jurisdiction, and this Court does not have general jurisdiction over Thrush. *Goodyear*, 564 U.S. at 927. But a state can have specific personal jurisdiction over a defendant by way of indirect sales through others. "Flow of a manufacturer's products into the forum . . . may bolster an affiliation germane to *specific* jurisdiction." *Ibid.* (emphasis original). The Court divided in *J. McIntyre* over establishing any clear lines in stream of commerce cases. All members of the Court agreed, though, that in an appropriate case, an out-of-state manufacturer can be subject to suit without entering a forum state if it seeks to serve the state's market. *J. McIntyre*, 564 U.S. at 882, 889, & 898. And the Eighth Circuit has

repeatedly affirmed that a state can have specific personal jurisdiction over an out-of-state manufacturer whose products penetrate the state through a regional distributor. *Viasystems*, 646 F.3d at 597; *Vandelune*, 148 F.3d at 947–48; *Barone v. Rich Brothers Interstate Display Fireworks Company*, 25 F.3d 610, 615 (8th Cir. 1994).

**4.** The indirect sale of the plane to Chris Air through a nearby regional dealer-distributor, along with all the facts establishing an intent to serve Arkansas customers, show that Thrush has minimum contacts with Arkansas. Thrush argues hard that Chris Air's lawsuit doesn't arise from its various direct contacts with Arkansas. True. But the sale through Mid-Continent is the starting point of analysis in this stream of commerce case. The cause of action arises from that indirect contact with Arkansas. All Thrush's other contacts with this state—such as marketing to, communicating with, and assisting Arkansas customers—go to Thrush's intent to target Arkansas specifically, albeit indirectly, through its dealer network, the only way any Thrush plane reaches any operator. Considering Arkansas's interest in the case and the relatively modest inconvenience on all the parties of litigating here, the Court concludes that it's fair and reasonable for Thrush to defend

this suit in this state. *Aly v. Hanzada for Import & Export Company, Ltd.*, 2017 WL 1089542, at *3 (8th Cir. 23 March 2017). This Court's exercise of personal jurisdiction over Thrush comports with due process. Motion, № 24, denied.*

So Ordered.

*/s/ DPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

14 June 2017

---

*Although the Court disagrees with Thrush on the jurisdiction issue, it commends and appreciates the excellent briefing by Thrush's lawyers.