# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS, PINE BLUFF DIVISION

| | |
|---|---|
| WEST WIND AIR, LLC, d/b/a CHRISAIR<br><br>*Plaintiff,*<br><br>v.<br><br>THRUSH AIRCRAFT, INC.<br><br>*Defendant*<br><br>THRUSH AIRCRAFT, INC.<br><br>*Third-Party Plaintiff*<br><br>v.<br><br>PRATT AND WHITNEY CANADA CORP.; PLANESMART AIRCRAFT SERVICES, LLC; and THE ESTATE OF DONALD SCOTT BROWN<br><br>*Third-Party Defendants.* | CIVIL ACTION NO. 5:16-CV-0274 DPM |

**PRATT AND WHITNEY CANADA CORP.'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Third-Party Defendant Pratt and Whitney Canada Corp. ("P&WC"), by its attorneys, Wright, Lindsey & Jennings LLP, submits this Reply Brief in Support of P&WC's Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

## INTRODUCTION

Thrush Aircraft, Inc. ("Thrush") filed an opposition to P&WC's motion to dismiss for lack of personal jurisdiction and implores this Court to apply a similar stream of commerce

1

reasoning that was used to deny Thrush's motion to dismiss for lack of personal jurisdiction. *See* Thrush Opp. at pp. 1-2; 5-9; and *ECF No.* 36. However, Thrush's argument is flawed because P&WC is positioned differently in the chain of distribution and it is more closely aligned to the recently dismissed Woodward, Inc. ("Woodward") as opposed to Thrush. Thrush ignores the central element of the Court's stream of commerce analysis – that Thrush sold the airplane to ChrisAir in Arkansas through Mid-Continent. It is undisputed that P&WC had no involvement in that transaction.

Similarly, Thrush cannot rely on an alter-ego theory to establish general jurisdiction over P&WC because Thrush has not presented a scintilla of evidence that would suggest that P&WC is an alter-ego of a wholly separate subsidiary owned by the same parent company. Such an effort requires "triangular piercing" of multiple corporate veils, which Thrush fails to even acknowledge, let alone satisfy. Accordingly, the alter-ego theory cannot be used to establish general jurisdiction over P&WC. Pratt & Whitney Canada therefore respectfully requests that this Court grant its motion.

## ARGUMENT

### I. THE STREAM OF COMMERCE THEORY FAILS BECAUSE THRUSH, NOT P&WC, SOLD THE AIRCRAFT TO MID-CONTINENT.

Thrush's argument that P&WC is in a "virtually identical" situation to Thrush under this Court's stream of commerce analysis conveniently ignores a key undisputed fact that defeats their assertion: Thrush, not P&WC, sold the subject aircraft to ChrisAir through Mid-Continent. Thrush acknowledges that "the Court held that the words 'stream of commerce' aptly 'describes how the plane progressed **from Thrush to Mid-Continent then to Chris Air**." *ECF No. 137* at p. 6 (quoting *ECF No. 36* at pp. 3 – 4) (emphasis added). The crux of the Court's stream of commerce analysis cited by Thrush was the sale of the aircraft to Chris Air through Mid-

Continent – it is undisputed that P&WC had no involvement in that transaction. *See ECF No. 36*, at pp. 5 - 7. P&WC's position is wholly removed from that sale therefore renders it in a completely different jurisdictional position, analogous to Woodward not Thrush, deeming the exercise of personal jurisdiction over P&WC inappropriate in Arkansas.

For the transaction that does apply to P&WC, it is undisputed that P&WC sold the engine to Thrush in Canada, and Thrush then shipped the engine to Georgia and installed it on the subject aircraft in Georgia. It stops there. At best, under Thrush's and the Court's stream of commerce analysis, P&WC could arguably be subject to jurisdiction in Georgia as a result.[1] Governing caselaw plainly holds that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state." *Asahi Metal Ind. Co., Ltd. V. Superior Court of California*, 480 U.S. 102, 112 (1987). The mere fact that a defendant's product may find its way into a forum state is insufficient to establish personal jurisdiction. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296-97 (1980); *McIntyre Mach., Ltd*, 131 S. Ct. at 2788. That, however, is precisely what occurred here. Accordingly, Thrush cannot establish specific jurisdiction over P&WC and this matter should be dismissed with prejudice.

## II.   THRUSH HAS NOT PIERCED THE TRIANGULAR VEIL TO PROPERLY APPLY THE ALTER-EGO THEORY TO P&WC.

---

[1] Thrush also attempts to import jurisdiction over P&WC based on various other irrelevant points made in its brief. First, the sales representatives that Thrush points to are not specific to Arkansas. Regional Sales Manager-Turboshaft Engineer, Scott Dial is responsible for the United States and the Caribbean Islands and Lewis Fairchild, Regional Sales Manager, is responsible for a region that encompasses Louisiana, Mississippi and Texas along with Arkansas. This is certainly not enough to establish specific jurisdiction, especially considering Mr. Dial and Mr. Fairchild had nothing to do with the sale of the subject engine in Arkansas. Second, Thrush attaches a poor quality and barely visible photo claiming that it depicts P&WC at the AAAA meeting in Arkansas. This hearsay photograph, however, is not affirmative proof of P&WC actually attending, as a company, in any official or unofficial capacity, such meeting. Thrush utterly lacks any personal knowledge or verification of the truth of what they purport the photograph to depict. Third, the referenced factory-direct rebate program applies to owners of a specific aircraft, which are sold all over the world. The rebate program was directed at an aircraft model, not a state or geographic area. Whether those aircraft, agricultural models or not, end up in Arkansas is again fortuitous under *World-Wide Volkswagen*.

Thrush also fails to establish general jurisdiction under the alter-ego theory. Thrush attempts to argue that two separate subsidiaries of the same parent company impute personal jurisdiction over P&WC in Arkansas. Such an argument requires that Thrush must pierce a triangular corporate veil, which it has failed to do.

"Personal jurisdiction can be properly asserted over a corporation if another is acting as its alter-ego, even if that alter-ego is another corporation." *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 649 (8th Cir. 2003). "Personal jurisdiction can be based on the activities of the nonresident corporation's in-state subsidiary, but only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter-ego." *Id.* at 648-49 (citing *Contractors, Laborers, Teamsters & Engineers Health Plan v. Hroch*, 757 F.2d 184, 190 (8th Cir. 1985).

The traditional parent-subsidiary argument for personal jurisdiction based on an alter-ego theory is "contingent on the ability of the plaintiffs to pierce the corporate veil." *Id.* at 649 (citing *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.*, 519 F.2d 634, 637 (8th Cir. 1975)). In applying Arkansas law, "[p]iercing the fiction of a corporate entity should be applied with great caution." *Id.* (citing *Banks v. Jones*, 239 Ark. 396, 390 S.W.2d 108, 111 (1965)). To pierce the corporate veil, plaintiff must prove "(1) abuse of the corporate form by a controlling shareholder, (2) to perpetrate fraudulent or illegal conduct against another." *Anderson v. Stewart*, 234 S.W.3d 295, 298–99 (Ark. 2006).

Here, however, Thrush proffers the argument that P&WC is a subsidiary of UTC, and UTC has two wholly separate subsidiary corporations, Pratt & Whitney PSD, Inc., which has a facility in Springdale, Arkansas, and Pratt & Whitney Engine Services, Inc., which is registered

4

to do business in Arkansas. *See* Thrush Opp. at pp. 9-10. Accordingly, Thrush is attempting to establish alter-ego general jurisdiction over P&WC based on wholly separate subsidiaries of its common parent, UTC. In such a novel scenario, Thrush must pierce a triangular veil among P&WC, UTC, and the wholly separate and unrelated subsidiaries of Pratt & Whitney PSD, Inc., and/or Pratt & Whitney Engine Services, Inc. *See Nursing Home Consultants, Inc. v. Quantum Health Services, Inc.*, 926 F.Supp. 835, 840 n. 12 (E.D. Ark. 1996) (aff'd, 112 F.3d 513 (8th Cir. 1997). Thrush has done nothing to satisfy this incredibly difficult burden.

Triangular piercing is "a sequential application of the traditional piercing doctrine and the 'reverse piercing' doctrine." *See Id*. This requires that Thrush first pierce the veil between P&WC and UTC, then "reverse pierce" downward between UTC and the two wholly separate Pratt & Whitney entities that Thrush asserts exist in Arkansas. In short, Thrush has proffered no evidence to satisfy this complicated and highly specific theory, which *Nursing Home Consultants* recognizes "is plainly out of harmony with both the traditional piercing doctrine and the more novel 'reverse piercing' doctrine." *Id*. This is because "these two doctrines are ordinarily applied to overcome the legal separateness between a corporation and its shareholders" – a wholly different proposition than imputing jurisdiction between wholly separate "sister" subsidiaries with no reciprocal ownership interests. *See Id*.

Simply noting similar names and a common parent fails to meet Arkansas's stringent requirements for applying "great caution" to alter-ego jurisdiction. Further, Thrush has put forth no evidence satisfying any step in the triangular piercing process. Singularly, Thrush points to the fact that Pascale Tremblay and Dominque Mathieu are officers for Pratt & Whitney Engine Services, Inc. and are also employed by P&WC. However, Arkansas expressly rejects this approach and holds that the fact that a parent and subsidiary have common managerial officers

5

does not support piercing the parent's veil for personal jurisdiction purposes. *See Epps*, 327 F.3d at 649; *K.C. Props. of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC*, 280 S.W.3d 1, 16 (Ark. 2008). Thrush's proposition – similar employees between separate, non-owned subsidiaries – is even farther removed. Thus, whether there are two employees in Arkansas in their capacity for another company has no bearing on the alter-ego analysis. Thrush has further failed to assert an allegation, let alone a shred of evidence, that there has been an abuse of corporate form or that the corporate form is in existence to perpetrate fraud or illegal conduct. "Great caution" should therefore be applied to reject Thrush's alter-ego argument under well-established Arkansas law. The exercise of personal jurisdiction remains inappropriate.

## CONCLUSION

Based upon the foregoing, it is respectfully requested that this Court grant P&WC's Motion to Dismiss Thrush's Third-Party Complaint for lack of personal jurisdiction.

Dated: August 10, 2018

Respectfully submitted,

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
E-MAIL: bdrennon@wlj.com

By: *[signature: Baxter P. Drennon]*
Baxter D. Drennon (2010147)

ATTORNEYS FOR THIRD-PARTY
DEFENDANT PRATT & WHITNEY CANADA
CORP.


## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Robert G. Bridewell
P.O Box 391
118 North Court Street
Lake Village, AR 71653

James T. Thompson, Jr.
2025 3rd Ave. North, Suite 216
Birmingham, AL 35203

Nolan E. Awbrey
2 North 20th Street, Suite 950
Birmingham, AL 35208

Fred C. Begy III
200 N. LaSalle Street, Suite 2810
Chicago, Il 60601

M. Stephen Bingham
Abtin Mehdizadegan
500 President Clinton Ave, Suite 200
Little Rock, AR 72201

Abtin Mehdizadegan
P.O. Box 3178
Little Rock, AR 72203-3178

Patrick J. Goss
120 East Fourth Street
Little Rock, AR 72201-2893

Baxter D. Drennon